# Mayer v. Thompson-Hutchison Building Co.
# and
# Thompson-Hutchison Building Co. v. Mayer.

104 611
112 593
104 611,
s116 636

*Action to recover Damages for Personal Injuries.*

1. *Principal and agent; agent liable for omission and neglect of duty.*— The relation of agency does not exempt a person from liability for any injury to third persons resulting from his neglect of duty, either through misfeasance or non-feasance, for which he would otherwise be liable; and the agent can not excuse himself on the plea that his principal is liable for such injury.

2. *Same; liability of superintendent of work for negligent construction.*—One superintending the construction of a building, as agent of the contractor, is jointly liable with the contractor in an action on the case for an injury to a third person, which resulted from culpable negligence in the construction of the walls of said building.

[Mayer v. Thompson-Hutchison Building Co. and Thompson-Hutchison Building Co. v. Mayer.]

3    *Liability of superintendent of work for negligent construction; when general affirmative charge erroneous.*—In an action against one who superintended the construction of a building for an injury caused by bricks falling from the top of one of the walls, alleged to be the result of the negligent construction of said walls, the admitted fact that the bricks fell, in the absence of some affirmative proof that the bricks were made to fall by some external force, is sufficiently conflicting with the negative evidence of the defendant, that the bricks could not have fallen from any defect or imperfection in the wall, to authorize the submission of the question to the jury; and in such case the general affirmative charge for defendant invades the province of the jury, and the giving of it is erroneous.

4.    *Master and servant; liability of contractor for bricks falling from wall.*—After the completion of a properly constructed wall, the contractor, who built it, is not liable for an injury caused by bricks falling from the top of said wall in consequence of an intentional or negligent act of an employé, while not acting within the scope of his employment; and this is true though proper scaffolding or safeguards to prevent the brick from falling had not been erected.

5.    *Negligence in not erecting scaffolding on outside of building; usage and custom.*—In the erection of a brick school building adjacent to a school house and lot, occupied and used by teachers and pupils, it is the duty of the contractor, while erecting the walls of such building, to put on the outside of said wall scaffolding or safeguards to prevent bricks and other material used thereon from falling and injuring the pupils of the school or other persons having a right to be in close proximity to such walls; and if from a failure to observe this duty, some one of such persons are injured by brick falling from the wall before its completion, the contractor can not avoid the liability resulting from such negligence upon the ground that it was not customary to erect scaffolding on the outside of such walls, for the reason that they could be built from the inside with safety.

6.    *Same.*—Where it is the duty of the contractor in erecting a building, to put scaffolds and safeguards on the outside of the walls during their construction, the fact that such scaffolds or safeguards could not be erected without occupying adjacent property, which he was forbidden by its owner to occupy, furnishes no excuse for failing to observe this duty; and such failure is culpable negligence, which renders the contractor liable for injuries resulting from the absence of such safeguards.

7.    *Action for injury resulting from negligent construction of building; bond of contractor inadmissible in evidence.*—In an action against a contractor for personal injuries resulting from the negligent construction of a building, the bond given by the contractor to the owner of the building, guaranteeing the faithful performance of the work provided for in the contract, is irrelevant to any issue involved in the cause, and is not admissible in evidence.

8. *Same; admissibility of the contract, and of the record of incorporation of contractor.*—In such an action there is no error in the admission in evidence of the contract entered into for the construction of the building and the record of the incorporation of the contractor.

9. *Same; evidence as to how workmen paid inadmissible.*—In such an action, evidence that the workmen on the building were paid by the number of brick they laid, instead of by the day, is too remote to be considered as showing negligent construction; and such evidence and and evidence as to how the workmen were paid is inadmissible.

APPEAL from the Circuit Court of Jefferson.

Tried before the Hon. JAMES J. BANKS.

This was an action on the case brought by Albert Mayer, by his next friend, against the Thompson-Hutchison Building Company, T. C. Thompson, W. H. Thompson, J. Harry Hutchison and Henry Hutchison, to recover damages for personal injuries alleged to have been inflicted by reason of the negligence of the defendants. The complaint contained two counts, the allegations of each of which are sufficiently stated in the opinion. The defendants pleaded the general issue, and issue was joined on these several pleas.

On the trial, as is stated in the bill of exceptions, the evidence for the plaintiff tended to show that at the time of the injury the plaintiff, a boy 12 years old, was a pupil of what was known as the "Henley School," a public school in the city of Birmingham. Prior to the accident, the mayor and aldermen of Birmingham, through the school board, had contracted with the Thompson-Hutchison Building Company to erect a brick school house, on property owned by said city, which was then occupied by a frame structure, used as a school house. In pursuance of said contract, the wooden structure was rolled from the cite for the new brick building, and work was commenced on the latter. The two buildings were 7 feet 2 inches apart. The city built a high board fence between the old wooden structure and the new building, which was 5 feet 1 inch from the entrance to the old building, and 2 feet 1 inch from the nearest wall of the new building. The entrance to the wooden school house was at the side nearest the new structure; and while the pupils were standing in line, preparatory to entering the school house, some one from the top of the new structure exclaimed "look out," as several bricks fell from the top

of the new wall, which was 60 feet above the ground, and one of the bricks struck the plaintiff on the head, fractured his skull, and permanently injured him, from the effects of which wound, his testimony tends to show, he greatly suffered. The evidence for the plaintiff further tended to show that there was no scaffolding, safeguard or protection of any kind between the old building and the new wall to prevent bricks from falling from the wall. It was also shown that the Thompson-Hutchison Company was a corporation, and the defendants, T. C. Thompson, W. H. Thompson and J. H. Hutchison were the only stockholders of said corporation, and were the directors of it; that T. C. Thompson was the president, J. H. Hutchison the vice-president and general manager, and W. H. Thompson was the secretary and treasurer; and that in their respective capacities they had personal supervision over the work of erecting the school building, and were about the work thereof almost every day. Plaintiff also introduced evidence, which was not controverted, that a scaffold or staging could have been put up between said building by projecting beams out of the window openings and putting planks thereon, and that brick buildings were frequently built from outside scaffolds constructed in this way; and that had such a scaffold been put between the two buildings it would have protected the pupils of the school from falling bricks while they passed in and out of the old school house. The evidence for the plaintiff further tended to show that if the cornice courses had been properly laid, they could not have fallen out without being shoved out; that the superintendent of the company was on top of the building when he heard the cry "look out," and went at once to that part of the building and found the masons about ten or fifteen feet back from the wall getting their tools together, to go to another part of the building; that the wall they had just left, had been freshly laid, up to the line of the top of ceiling joists, and there was no one nearer the broken place in the wall than the masons, and there was no person on the building at the time except the masons and laborers of the defendant company. The plaintiff introduced in evidence, against the separate objections and exceptions of the defendants, the record of the incorporation of the defendant company, and also the

contract between the defendant company and the school
board of the city of Birmingham for the erection of the
building, from the walls of which the bricks fell that
caused the injury.   The plaintiff also introduced in evi-
dence the bond made by the Thompson-Hutchison Build-
ing Company, guaranteeing that it would faithfully per-
form the work provided for in said contract.   To the in-
troduction of this bond in evidence the defendants ob-
jected, and duly excepted to the overruling of their ob-
jection.

The testimony of H. B. Wheelock, a witness for the
defendants, tended to show that he had been at the time
of the alleged injury an architect for a number of years,
and had had a great deal of experience in constructing
such buildings as the one from which the bricks fell, as
complained of in the present case, and that he was a
member of the firm of architects employed by the mayor
and aldermen of Birmingham to draw the plans and
specifications and to superintend the erection of said
building, and was so employed at the time of said injury;
that he was at said building almost every day during its
erection, and was there within thirty minutes after the
falling of the  brick ; that said building was constructed
in  a first class, workmanlike manner, and in exact ac-
cordance with the plans and specifications for its erec-
tion ; that he examined that part of the wall from which
said bricks fell, before they fell, and within  thirty min-
utes after they fell, and he could see no cause for their
falling;  "that said wall, as to scaffolds, barriers and
safeguards, was built and constructed in a first class,
workman-like manner, and as is usual and customary in
the proper construction of such walls ; and that the only
work said T. C. Thompson and W. H. Thompson did in
and about said building was as the employés and officers
of said Thompson-Hutchison Building Company."

The testimony of C. M. Allen, another witness for the
defendants, tended to show that he was the carpenter
foreman in the construction of said building, and that
as such carpenter foreman he superintended all the car-
penter work upon said building, including the erection
of scaffolds, barriers and safeguards; that he had had a
great deal of experience as a carpenter in the construc-
tion of such buildings as the one involved in this suit;

"and that there were as many scaffolds, safeguards and barriers erected in, around and about the walls of said building, as was necessary for the proper construction of the same, and as is usual and customary in the erection of such buildings."

The testimony of Jack Davis, another witness for the defendant, was that he was a brick mason, and had had a great deal of experience in laying brick in erecting buildings like the one in question, and that he had the position which required him to lay the brick on the corner of the wall of said building from which the brick fell that caused the alleged injury; "that he had just laid the brick on that corner and had backed the work up, and had finished it in first-class, workmanlike manner, bonded and all, and had only finished it about five minutes and had left it, and was not in sight of it when he was informed that the brick had fallen; that it was not necessary, and it would have been out of place and improper for any workman to have touched the work on said corner after he had finished and left it as aforesaid; that he did not see the brick fall, and does not know how it happened or could have happened except by the interference of some one who had no business there; that he had been warned and cautioned by the defendant, T. C. Thompson, as an officer of the Thompson-Hutchison Building Company, as to the laying of the brick so as not to injure any one by the falling of the brick, or otherwise."

The witness, Charles Wheelock, testified that the brick could not have fallen of themselves from said wall, if they were laid as set out in the testimony of said Jack Davis; that it would have taken a violent push to have caused them to fall; that he was an architect, had superintended the erection of many buildings like said new building; that said brick could not have fallen on the plaintiff, if they had fallen of themselves. He further testified that it was impracticable to have erected a scaffold on the outside of the wall, as the defendant had no control over the ground on the outside of the fence next to the old building, and it could not have been erected on the inside of the fence next to the new building; that it is not customary in erection of brick buildings to erect scaffolds on the outside of the wall.

The defendant also introduced one C. L. Hutchison who testified that he was foreman of the brick work on said new building in the absence of his father, one of the defendants; that said Jack Davis was a good and competent and skilled brick layer and worked at the place on said wall where said brick fell; witness did not see brick fall nor the place from which they they fell at the time they fell; that he walked about 50 feet before he saw the place, and he saw said Davis standing within 10 feet of said place; that witness had time and again, before said brick fell and plaintiff was hurt, cautioned all the brick layers on said new building to be careful in handling brick, and not to let any fall, and he had often heard his father and T. C. Thompson, as agents and officers of said Thompson-Hutchison Building Company, do the same thing, before said brick fell. There were two men, a negro and a white man, within 10 feet of said place where the brick fell when he first saw said place after said brick fell. The defendant then asked the witness whether or not he knew how the brick layers on said new building, including said Jack Davis, were paid; whether by the day or how, or by number of brick laid. Witness answered that he did. Defendant thereupon asked witness, how were said brick layers paid? The plaintiff objected to this question, the court sustained the plaintiff's objection, and the defendant duly excepted to the ruling of the court. The other necessary facts of the case are sufficiently stated in the opinion.

There were many charges asked by the plaintiff in writing, which the court refused, and to the refusal to give each of which the plaintiff separately excepted. There were also several charges requested by the defendants in writing, and refused by the court; to the refusal to give each of which the defendants separately excepted. The opinion of the court renders it unnecessary to set these charges out in detail.

There was judgment for the plaintiff against the Thompson-Hutchison Building Company, assessing his damages at $8,000, and there was judgment in favor of the other defendants. These are cross appeals; the plaintiff and defendants, each, assigning errors.

HEWITT, WALKER & PORTER, for Thompson-Hutchison

[Mayer v. Thompson-Hutchison Building Co. and Thompson-Hutchison Building Co. v. Mayer.]

Building Co. and others.—The officers of the defendant company were not guilty of negligence in not having scaffolding erected on the outside of the wall next to the old school building for the protection of the children. If they could be said to have been negligent in not having such scaffolding erected, they would not be liable for the injury to plaintiff in this cause; for the evidence shows almost conclusively that the immediate cause of the brick falling was by their being pushed out of the wall, either intentionally or accidentally by some workman of the defendant. The omission to have the scaffolding erected outside of the wall next to the old school building contributed to the injury remotely, not proximately. The officers of the defendant corporation were but agents of the corporation. The agent is only liable to a third party for his own misfeasance and positive wrongs, but he is not liable to third persons for his non-feasance or mere omissions of duty in the course of his employment. There is no privity in such cases between the agent and third persons, and the privity only exists between the agent and his principal to whom the agent is liable for such neglect of duty.—Story on Agency, § 308; *Lane v. Cotton*, 12 Mod. Rep. 488; *Harriman v. Stowe*, 57 Mo. 93.

WARD & JOHN, for Mayer.—1. Every person who does or directs the doing of an act, which can not be done at all without constituting and creating a nuisance, is personally responsible, whether he was acting for himself, or for or on behalf, or for the benefit of another, and whether he is a principal and employer, or a mere servant carrying into effect the orders of the master; and an action may be brought against all persons doing, or ordering the doing of, the wrongful act, and the master and servant may be sued jointly or severally as the injured person may elect.—1 Addison on Torts, pp. 301, 303, 304, 624–5; 2 Addison on Torts, 554–5, 562; Wood's Master & Servant, 667, § 325; Whittaker's Smith on Negligence, 201; *Wilson v. Peto*, 6 Moore 47; *Witt v. Hague*, 2 Dowling & Ryland 33–5; *Mitchell v. Harmony*, 14 How. (U. S.) 115; *Johnson v. Barber*, 5 Gill. (Ill.) 425; *Bennett v. Ives*, 30 Conn. 329; *Wright v. Wilcox*, 19 Wend. 343; *Phelps v. Wait*, 30 N. Y. 78; *Wright v. Compton*, 53 Ind. 337; Story on Agency, §§ 309, 313; 1

Sherman & Redfield on Negligence, § 244; 1 Sutherland on Damages, § 140.

2. The defendants were absolutely responsible for any act of theirs or their servants under their actual or ostensible authority which resulted in casting any part of defendant's property upon the land lawfully occupied by Mayer.—2 Sherman & Redfield on Negligence, § 701; 3 Sutherland on Damages, § 1035; *Gorham v. Gross*, 125 Mass. 232; *Smith v. Boston Gas L. Co.*, 129 Mass. 318; *Hay v. Cohoes Co.*, 3 Barb. 42; *Wright v. Compton*, 53 Ind. 337; *Bohan v. Port Javis Gas L. Co.*, 112 N. Y. 23.

3. If for the time, the yard, steps and porch were used as a way over which hundreds of people passed rightfully, it thereby, so far as defendants' duty in reference thereto was concerned, became a highway and entitled to the same protection and safeguards.—*Wright v. Compton*, 53 Ind. 337; *Driscoll v. New York & R. L. Co.*, 37 N. Y. 637; *Jager v. Adams*, 123 Mass. 26; *Gray v. Boston Gas L. Co.*, 114 Mass. 149.

4. The failure of defendants to erect safeguards or shelter over the steps and porch was negligence and a nuisance, and renders them liable.—Cooley on Torts, 607-8, 665; *Mullen v. St. John*, 57 N. Y. (12 Sick.) 567. This case is authority, that when an injury such as this is shown, it is on defendant to show excuse.—*Ford v. Lyons*, 41 Hun. 512; *Meyer v. Metzler*, 51 Cal. 142; *Jager v. Adams*, 123 Mass. 26; *Hunt v. Hoyt*, 20 Ill. 544; *Clare v. Nat. Bank*, 1 Sweeney, 539; Whittaker's Smith's Negligence, 61, 66; 1 Wood on Nuisance, §§ 104, 119, 127.

COLEMAN, J.—The Thompson-Hutchison Building Co., a corporation, contracted to erect a brick building in the city of Birmingham. Thompson, a corporator and president of the corporation, as its agent and officer, controlled and directed the workmen in its construction. A brick, either without the application of force, or by force, fell from the top of the wall, which, in falling, struck the plaintiff below on the head, and greatly injured him. Thompson was not present when the injury occurred, and was not otherwise liable than as an agent or officer of the company in charge. The first count of the complaint charges, that the defendants ''did erect and build a certain building * * * in so careless, negligent

and improper a manner, that by reason thereof certain brick fell from said building," &c. In the second count it is charged that the defendants "did erect and build a certain four story brick building, * * * * * to the height of sixty feet, without any scaffold barrier and safe-guard, to protect persons, * * * from brick falling from said building, when it was their duty to do so," &c. The corporation and Thompson and the other corporators were jointly sued. The jury, under the instruction of the court, returned a verdict against the corporation and in favor of Thompson. This statement of the case we deem sufficient, to bring up the material questions involved.

The first we will consider is, conceding that the facts tend to show negligence and a liability on the part of the contractor corporation, as averred in the complaint, is one who acts merely as an agent of the corporation, (though he may be also in fact an officer of the corporation), in superintending and controlling the erection of the building for the contractor, jointly liable with the contractor in an action on the case for such negligence? If the proof had shown that the injury resulted from culpable negligence in the construction of the wall, the agent in control, by whose orders it was thus constructed, would be guilty of misfeasance, and jointly liable with the contractor. We think all the authorities are to this effect. The court instructed the jury to find the issue in favor of the defendant Thompson. We will first consider the correctness of this charge as applied to the first count. All the witnesses, who had knowledge of the facts, testified that the wall was constructed in a workmanlike manner, and these witnesses and others, who gave expert testimony, swore, that the bricks could not have fallen from any defect or imperfection in the wall or cornice. Nevertheless the bricks did fall. A person was seen standing at the top of the wall near the place from which they fell, and was heard to say "look out." The evidence does not show who this person was, and it seems he was not discovered, or, if so, he was not examined. Precisely what caused the bricks to fall is not positively shown. The defendants contend that the person seen near the place, from where they fell, must have pushed them off the top of the wall. This may be true,

and it may be that the weight of the evidence tends to this conclusion, but in the absence of some affirmative evidence that the bricks were pushed over, is not the admitted fact that the bricks fell, a circumstance or fact which the jury had the right to consider, in determining the weight and credibility of the defendants' testimony, that they could not have fallen without some external force? The general affirmative charge should not be given in any case, where there is conflict in the evidence as to material facts. We are of opinion the charge given was an invasion of the province of the jury. If the bricks were pushed over by some person, and did not fall in consequence of a defect in the wall, the defendants were not liable under the first count of the complaint. This conclusion is based upon the assumption which we think clearly established in the present record, that the brick work on the wall had been completed, and that no person in the employ of the contractor, or under the control of Thompson, had any business at the time near the place of the wall from which the bricks fell. We think it clearly shown, that if an employé or laborer pushed the bricks over, after the completion of the wall, whether done intentionally or negligently, it was an act not within the scope of his employment, nor was it done in the performance of any duty.—Wood on Master and Servant, p. 535.

The second count charges the defendants with neglect in their failure or omission to erect scaffolds or guards, so as to prevent brick from falling to the ground. On this proposition the defendant, Thompson, invokes the doctrine that an agent or servant is not liable for a mere omission or non-feasance. The rule is stated as contended for in Story on Agency, § 308, and in Story on Contracts, § 171; and there are numerous decisions which fully sustain the text. There are courts of high authority which hold differently. Our attention has not been called to any decision of the question in this State, and in declaring the law which shall govern, we have carefully considered both lines of decisions.

The principle upon which the rule is founded, as declared by Story, is, that there is no privity between the servant or agent and third persons, but the privity exists only between him and the master or principal. This re-

lation of privity is that from which arises the maxim *respondeat superior*. The liability of the principal or master to third persons does not depend upon any privity between him and such third persons. It is the privity between the master and servant that creates the liability of the master for injuries sustained by third persons on account of the misfeasance and non-feasance of the servant or agent. It is difficult to apply the same principles which govern in matters of contract between an agent and third persons to the torts of an agent which inflict injury on third persons, whether they be of misfeasance or non-feasance, or to give a sound reason, why a person, who, while acting as principal, would be individually liable to third persons for an omission of duty, becomes exempt from liability for the same omission of duty, because he was acting as servant or agent. The tort is none the less a tort to the third person, whether suffered from one acting as principal or agent, and his rights ought to be the same against the one whose neglect of duty has caused the injury. We think the better rule declared in *Baird v. Shipman*, 132 Ill. 16, (22 Amer. St. Rep. 504), in which it is held, that "an agent of the owner of property, who has the complete control and management of the premises, and who is bound to keep them in repair, is liable to third persons for injuries resulting to the latter, while using the premises in an ordinary and appropriate manner, through the neglect of such agent. And the agent can not excuse himself on the plea that his principal is liable. It is not his contract that exposes him to liability to third persons, but his common law obligation to so use that which he controls as not to injure another." See notes to this case in 22 Amer. St. Rep. 504, *supra*. In *Ellis v. McNaughton*, 76 Mich. 237, (15 Am. St. Rep. 308), we find this language : "Misfeasance may involve the omission to do something which ought to be done; as when an agent, engaged in the performance of his undertaking, omits to do something which it is his duty to do under the circumstances ; as that when he does not exercise that degree of care which due regard for the rights of others requires." In *Campbell v. Portland Sugar Co.*, 62 Me. 552, (16 Amer. Rep. 503), it is said: "It is the actual personal negligence of the agents which constitutes the constructive negligence of the corporation. The

corporation acts through and by them, and they act for the corporation, and when their acts or neglects result in injury to third persons, they are equally responsible with their principal." The rule is broadly stated in 14 Amer. & Eng. Encyc. Law, 814. We might cite other decisions if deemed necessary. We hold, that the mere relation of agency does not exempt a person from liability for any injury to third persons resulting from his neglect of duty, for which he would otherwise be liable.

It is contended by the defendants, *first*, that they were under no duty to erect scaffolding or safeguards to prevent brick from falling; and, *second*, that under the circumstances they had no right to do so. The first of these propositions is asserted under the evidence, to the effect that it is not customary to erect scaffolding on the outside of the wall, and that the wall may be built from the inside with safety. The facts will appear in the statement of the facts of the case. Our conclusion is that, for the purposes of this case, the defendants were as much bound to erect scaffolding or safeguards, as if the wall had been along the sidewalk of a public street of the city of Birmingham. If, in the course of the erection of a brick wall along the sidewalk of a public street, the mason, being at work on the inside, should accidentally, or from want of skill, let slip from his hand a brick, or inadvertently cause one to topple down, and it should fall on the head of some person passing along the public sidewalk, where he had the right to be, there being no safeguard or precaution to avert such a possible result, the principal or person would be liable. In such a case the duty is so apparent, and the probable or possible danger so obvious, that no amount of testimony as to the usage or custom, or comparative safety, would excuse such culpable negligence.

It is next contended by the defendants, that it was impossible to erect a scaffold or safeguards without occupying the space between the wall under construction and the building next to it, or by using the windows of the adjacent building, and that they were positively prohibited from using either by the owners. We do not think this any excuse. The defendants were under no compulsion to erect the building. They should have provided for such contingencies in their contract. No man can

with impunity use his own property or exercise any supposed rights or privilege in such way as to endanger the lives of innocent persons, in the exercise of a public right and privilege. Pecuniary interest will not excuse a nuisance which endangers public safety. It is unnecessary to cite authorities on this proposition.

The defendants, however, are not liable for any neglect of duty, unless such neglect was the proximate cause of the injury. So in this case, if the defendant had completed the brick wall, had ceased to work on it, and some person, even though an employé, of his own accord, not acting under orders, nor within the scope of his duties, nor in furtherance of his employment, intentionally or recklessly or heedlessly pushed the brick from the wall, which fell and caused the injury, the act of such person, and not the neglect to provide safeguards, would be the proximate cause of the injury, and he alone would be responsible.

There is no count counting on a willful or intentional wrong, nor do we think the evidence in the record authorizes such an allegation.

The main question of inquiry may be stated as follows: Did the brick fall because of a defect in the construction of the wall or cornice? If so, the defendants are liable under the first count; otherwise they are not liable under this count. Was it from a want of skill, or of due care, or from heedlessness or recklessness on the part of some employé at the time engaged within the scope of his duties or employment, that caused the brick to fall, and not from a defect in the wall? If so, the defendants were liable under the second count of the complaint. On the other hand, were the bricks pushed off the wall by some employé, after the brick work of the wall had been completed in a proper and workmanlike manner, whose duties did not call him there, and who at the time was not acting under proper orders, or within the scope of his duties, nor in furtherance of his master's contract? If so, whatever may have been his motive or the inducement, the defendants are not liable. The duty to construct scaffolding in such a case is to afford security and protection, during the erection of the wall. If the wall has been fully completed without injury, the failure to construct scaffolding can not be re-

[Eureka Co. *et al.* v. Norment *et al.*]

garded as negligence proximately causing injury, if the injury was caused by the fall of a brick, intentionally or heedlessly pushed off the wall after its completion.

The sureties as such on the bond of the contractor are not liable in this action, and the bond had no office to perform on the trial. We do not see that there was error in the admission of the record of the incorporation of the contractor, nor in the admission of the contract entered into for the construction of the building.

We do not think the court erred in refusing to allow the witness to answer the question, as to whether Davis, the brick mason, was paid by the day or by the thousand of bricks put in the wall. It is possible that a person who is paid by the number of bricks he may place, instead of by the day, may be less careful in placing brick, but this fact is most too remote to be considered as tending to show that the wall was not properly constructed.

Nearly all the assignments of error in both appeals, are based upon charges given and refused. We deem it unnecessary to mention them in detail, as the principles of law governing the case have been plainly stated. There was error in the instructions given on behalf of the plaintiff, and error in those given for the defendants.

Reversed and remanded on both appeals.